## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

MARGARET "PEGGY" SEDIVY,               Civil No.  05-083-S-EJL

          Plaintiff,                   MEMORANDUM ORDER

vs.

CITY OF BOISE,

          Defendant.

Plaintiff, Margaret (Peggy) Sedivy, brings this lawsuit pursuant to state and federal law against Defendant City of Boise ("City"), alleging that she was fired from her employment in retaliation for calling attention to the City's mismanagement of public funds and/or for her involvement in filing a complaint against the City with the United States Department of Housing and Development ("HUD").  (Complaint at 3). The City has moved for summary judgment and the Plaintiff has opposed the same. The motion is now ripe.  Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without a hearing.[1]

### Background

On April 28, 2003, Plaintiff was hired as the executive director of Community House, Inc ("CHI"). Plaintiff was hired as an at-will employee and reported to the CHI Board of Directors and to Deanna Watson, President of the CHI Board of Directors. At the time of her hiring, CHI leased a Community House facility from the City and provided a wide range of housing and other services to the homeless.

---

[1]     See Partridge v. Reich, 141 F.3d 920, 926 (9th Cir.1998) (holding that "a district court can decide [summary judgment] without oral argument if the parties . . . . ha[ve] had an adequate opportunity to provide the trial court with evidence and a memorandum of law").

On August 20, 2003, CHI filed a Housing Discrimination Complaint with HUD against the City. The complaint was signed by Plaintiff on behalf of the CHI Board of Directors and alleged among other things that the City "has decided to substantially modify management and operation of Community House with the purpose and affect of limiting housing opportunities for families with children, persons with disabilities, non-Christians and men or women." (Complaint at 5). Plaintiff alleges that in September of 2003, Vern Bisterfeldt, a Boise City Council member and CHI Board member, requested that Plaintiff withdraw the HUD complaint. Similarly, Plaintiff alleges that in October of 2003, Sally Zive of the United Way told Plaintiff that the HUD complaint could affect funding and Plaintiff's success as executive director of CHI.

In the Fall of 2003, Plaintiff discovered that CHI had serious financial problems and was likely insolvent. In January of 2004, Plaintiff and other CHI management met with the City's Mayor, Dave Bieter, and Boise City Council members, Maryanne Jordan and Vern Bisterfeldt, to report CHI's financial problems. Shortly thereafter, on February 20, 2004, Theresa McLeod, a city employee, met with the CHI Board of Directors and staff to discuss reorganization of the management of Community House. Although the parties dispute the substance of that meeting, a March 18, 2004 memorandum, signed by Deanna Watson, as President of CHI, indicates that at the February 20, 2004 meeting the CHI Board voted to approve the reorganization of Community House and relinquish its management and control over the operation of Community House. (Def.'s Ex. E, Depo. Ex. 29). Plaintiff disputes whether a quorum of the CHI Board was present for the vote.

After the February 20, 2004 meeting, the City contracted with the Salvation Army, on an interim basis, to manage the Community House. On February 25, 2004, the Mayor, Deanna Watson, Theresa McLeod, and the Plaintiff met at the Community House. At the meeting, the Mayor spoke to the Plaintiff and, although the precise language used by the Mayor is in dispute, it is undisputed that at the Mayor's prompting the Plaintiff began two weeks of paid leave.

During the Plaintiff's absence the City arranged for employment of Community House employees through an employment agency, Personnel Plus. Joy Buersmeyer was hired as interim manager of Community House.

PAGE 2

On March 10, 2004, Plaintiff met with the Mayor. Plaintiff was told at the meeting that Joy Buersmeyer had been hired as manager of Community House and therefore Plaintiff would not be offered the executive director position but that she could apply for other employment through Personnel Plus. Plaintiff declined to apply for any other position at Community House and subsequently filed this lawsuit.

In Plaintiff's Complaint, she alleges in the First Cause of Action that the City has violated the Idaho Protection of Public Employees Act by firing her "from her position as Executive Director of the Community House." (Complaint at 10). In the Second (alternative) Cause of Action, Plaintiff alleges that her discharge violates Idaho Public Policy. And in the Third Cause of Action, Plaintiff alleges that the City retaliated against her in violation of the federal Fair Housing Act, 42 U.S.C. § 3617 ("FHA"). The City moves for summary judgment on all the Plaintiff's claims.

## Standards

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Adams v. Synthes Spine Co., 298 F.3d 1114, 1116-17 (9th Cir. 2002).

When analyzing the merits of the state law claims the Court is mindful that it must apply the substantive law of Idaho, as interpreted by the Idaho Supreme Court. See Northwest Acceptance Corp. v. Lynnwood Equip., Inc., 841 F.2d 918, 920 (9th Cir.1988). "[W]here the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." Air-Sea Forwarders, Inc. v. Air Asia Co., 880 F.2d 176, 186 (9th Cir. 1989), cert. denied, 493 U.S. 1058 (1990). In this regard, the federal court must follow an intermediate state court decision unless other persuasive authority convinces the federal court that the state supreme court would decide otherwise. Richardson v. United States, 841 F.2d 993, 996 (9th Cir. 1988).

**PAGE 3**

## Discussion

**1. First Cause of Action**

 Plaintiff alleges that the City violated the Idaho Protection of Public Employees Act, Idaho Code § 6-2104, by placing her on leave and by terminating her position as executive director.  The City challenges the First Cause of Action on several grounds. To begin with, the City points out that Plaintiff has failed to timely bring this claim within the 180-day limitation period set forth in Idaho Code § 6-2105. Plaintiff, however, asserts that the City was required to raise this defense in its Answer pursuant to Rule 8(c) of the Federal Rules of Civil Procedure.

 Plaintiff's contention is incorrect. The Ninth Circuit Court of Appeals has liberalized the pleading requirement of Rule 8(c) by holding that a defendant's failure to raise a statute of limitations defense in the initial pleading does not preclude the defendant from later bringing a motion based on that defense. Rivera v. Anaya, 726 F.2d 564, 566 (9th Cir.1984). As long as a defendant asserts the statute of limitations as an affirmative defense before or at trial, it is not waived. See Healy Tibbitts Construction Co. v. Insurance Co. of North America, 679 F.2d 803, 804 (9th Cir.1982); United States v. DeTar, 832 F.2d 1110, 1114 (9th Cir. 1987).

 Plaintiff does not dispute the merits of the City's statute of limitation defense, and it is clear from the record that the Plaintiff's claim is untimely. Plaintiff argues instead that it would be prejudicial to bar the claim now. See Han v. Mobil Oil Corp., 73 F.3d 872, 877 (9th Cir.1995) (stating that "we have ruled that an affirmative defense based on the lapse of a statutory limitation period may be raised for the first time on a motion for summary judgment when there is no prejudice to the plaintiff"). Specifically, Plaintiff notes that it is only in the First Cause of Action that Plaintiff alleges the City and Plaintiff "enjoys an employment relationship." (Pl.'s Resp. Br. 4). In Plaintiff's Second and Third Causes of Action, which are asserted in the alternative, Plaintiff alleges she is an employee of CHI. Accordingly, Plaintiff argues that the time spent on preparing a claim based on an employment relationship with the City would be a waste of resources if the First Cause of Action is barred as untimely. (Id.).

**PAGE 4**

The prejudice inquiry, however, is not designed to shield a cause of action from legal scrutiny; it is meant to assure that a party is not unfairly surprised or placed in a position where it cannot adequately respond to an opponent's defense. Lucas v. United States, 807 F.2d 414, 418 (5th Cir.1986) (explaining that "the defendant does not waive an affirmative defense if he raised the issue at a pragmatically sufficient time, and the plaintiff was not prejudiced in its ability to respond"); Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 350 (1971) (explaining that the rule's purpose is to give the opposing party notice of the affirmative defense and a chance to rebut it). Here, the issue of the statute of limitation was raised in the City's motion for summary judgment and the Plaintiff had ample opportunity to address the issue in her opposition brief. Under these circumstances, the Plaintiff has not been prejudiced in her ability to respond. See, e.g., Cedars-Sinai Med. Ctr v. Shalala, 177 F.3d 1126, 1128-29 (9th Cir. 1999) (finding that there was no prejudice to the plaintiff even though the affirmative defense of statute of limitations was not raised until the defendant's reply brief because the plaintiff was able to file a sur-reply).

The Court concludes, then, that the First Cause of Action is time barred. But even if considered on the merits the Court would find it appropriate to enter summary judgment on this claim.

The City primarily argues that the First Cause of Action fails for lack of an employer-employee relationship between the City and Plaintiff. Plaintiff has admitted that she was hired by CHI, and not the City. (Complaint ¶ 7; Pl.'s Resp. Br. 6 (stating that "Plaintiff was hired by the Community Board of Directors and directed by them on a day to day level"). Plaintiff also admits she was not working as an independent contractor to the City. (Pl.'s Resp. Br. 6). Nevertheless, Plaintiff maintains that once the Mayor became involved in arranging her two-week leave with pay she was transformed into a "de facto" public employee of the City's. (Pl.'s Resp. Br. 5, 9, 12).

In support of this theory, Plaintiff cites to the Idaho case law that has established a test for determining whether a pre-existing work relationship is an employer-employee relationship or instead an independent contractor relationship.  These cases, however, are not applicable to Plaintiff's situation. As the Washington State Court of Appeals observed when faced with similar

authority on a de facto employment claim: "[Plaintiffs'] argument is based entirely upon cases distinguishing employees from independent contractors. . . . as [plaintiffs] were neither employees nor independent contractors of the [defendant], these cases have no relevance here." <u>Awana v. Port of Seattle</u>, 89 P.3d 291, 293 (Wash. Ct. App. 2004)  Similarly, in Idaho, the cases that recognize the concept of a de facto employee do so based on a pre-existing employment relationship as an independent contractor. <u>See e.g.</u>, <u>Ostrander v. Farm Bureau Mut. Ins. Co. of Idaho, Inc.</u>, 851 P.2d 946, 950 (Idaho 1993) (recognizing "that due to bargaining position and other circumstances surrounding a working relationship some nominal independent contractors may be de facto employees").

Simply put, under the circumstances presented here, there is no precedent or authority to be found in the Idaho cases or statutes to support a judicially created de facto public employment relationship. When reviewing a novel state law claim for relief the Court must keep in mind the proper role of federal courts:

> [F]ederal courts may not engage in judicial activism. Federalism concerns require that we permit state courts to decide whether and to what extent they will expand state common law. Our role is to apply the current law of the jurisdiction, and leave it undisturbed. . . .  Absent some authoritative signal from the legislature or the state courts, [there is] no basis for even considering the pros and cons of innovative theories. We must apply the law of the forum as we infer it presently to be, not as it might come to be.

<u>City of Philadelphia v. Lead Indus. Ass'n</u>, 994 F.2d 112, 123 (3d Cir.1993) (citations omitted).

For the reasons stated above, the Court finds the First Cause of Action time-barred and in the alternative finds that there is no genuine issue of material fact as to the lack of an employer-employee relationship between Plaintiff and the City. Therefore, the City's motion will be granted and the First Cause of Action dismissed.

## 2. Second Cause of Action

In her Second Cause of Action, Plaintiff alleges that her discharge violates Idaho Public Policy. Here, however, Plaintiff admits that her employer was CHI. (Complaint ¶ 50; Pl.'s Resp. Br.

4).[2]  A claim based on a violation of Idaho Public Policy may only be asserted against a plaintiff's

employer. Ostrander, 851 P.2d at 949 (stating that a cause of action for discharge in contravention

of public policy may be raised "only in employee-employer relationships").  Because Plaintiff brings

this claim against the City, who Plaintiff admits was not her employer, the Second Cause of Action

must be dismissed.[3]  Id.

### 3. Federal Cause of Action Pursuant to 42 U.S.C. § 3617

          In contrast to the flawed Second Cause of Action, the lack of an employee-employer

relationship is not necessarily fatal to Plaintiff's federal law claim against the City.  Section 3617

of the Fair Housing Act  "extends to other actors who are in a position directly to disrupt the

exercise or enjoyment of a protected right and exercise their powers with a discriminatory animus."

Michigan Protection and Advocacy Service, Inc. v. Babin, 18 F.3d 337, 347-48 (6th Cir. 1994); see

also Walker v. City of Lakewood, 272 F.3d 1114, 1127 (9th Cir. 2001) (discussing the same and

citing with approval to  Michigan Protection and Advocacy Service, Inc. ).

          To avoid summary judgment on her § 3617 claim, Plaintiff must first "establish a prima facie

case of retaliation [by] show[ing] that (1) [s]he engaged in a protected activity; (2) the defendant

subjected [her] to an adverse action; and (3) a causal link exists between the protected activity and

the adverse action." Walker, 272 F.3d  at 1128. If successful, "the burden shifts to the defendant to

---

          [2]          "Factual assertions in pleadings and pretrial orders, unless amended, are
considered judicial admissions conclusively binding on the party who made them." American
Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226-27 (9th Cir. 1988).  Similarly, "statements of
fact contained in a brief [also] may be considered admissions." Id. Accordingly, Plaintiff's
factual declaration of an employer-employee relationship with CHI in the Second Cause of
Action and, by incorporation, in the Third Cause of Action, and again in her response brief, are
binding on her. This admission did not carry over to her First Cause of Action because it was not
incorporated therein and "a pleading should not be construed as an admission against another
alternative or inconsistent pleading in the same case." McCalden v. California Library Ass'n, 955
F.2d 1214, 1219 (9th Cir.1992); Molsbergen v. United States, 757 F.2d 1016, 1019 (9th
Cir.1985).

          [3]          Based on the facts set forth in the Second Cause of Action, Plaintiff moved to
amend her Complaint to assert a state law claim of "tortious interference with the contract of
employment the Plaintiff . . . had with her employer, [CHI]." The motion, however, was filed too
late and it was denied by the magistrate judge. (Docket No. 36). Plaintiff did not file an objection
to that ruling and therefore the magistrate judge's decision is conclusive. Dist. Idaho. Loc. Civ.
R. 72.1(b).

articulate a legitimate nondiscriminatory reason for its decision." Id. "If the defendant articulates such a reason, the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive." Id.

The City concedes that Plaintiff's involvement in filing the HUD complaint is a protected activity. The City denies, however, that it subjected Plaintiff to any adverse action and/or that there is a causal link between Plaintiff's protected activity and any adverse action.

"In the context of a § 3617 claim, [the] adverse action must be in the form of 'coercion, intimidation, threats, or interference.'" Id. at 1128. "Interference is 'the act of meddling in or hampering an activity or process," and that language "has been broadly applied." Id. at 1128-29.

Plaintiff points to three actions by the City that she contends demonstrate interference with her fair housing activity. First, that Vern Bisterfeldt and Sally Zive asked Plaintiff to withdraw the HUD complaint. Second, that at the February 25, 2004 meeting, the Mayor became involved in arranging Plaintiff's paid leave. And finally that the City terminated and/or failed to employ Plaintiff when it hired Joy Buersmeyer as manager of Community House .

Assuming that material issues of fact exist as to whether there was "interference" sufficient to constitute adverse actions, Plaintiff has failed to come forward with evidence to show a casual link between these adverse actions and the protected activity. The alleged retaliatory/adverse actions having to do with the paid leave and elimination of the executive director position occurred more than six months after Plaintiff filed the HUD complaint. The Ninth Circuit has stated"that, in some cases, causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065(9th Cir. 2002). However, the adverse action "must have occurred fairly soon after the employee's protected [activity]," and a six month lapse is "simply too long." Id. (holding that a significant lapse of time between the protected activity and an adverse employment action is simply too long to give rise to an inference of causation and citing the following: Filipovic v. K & R Express Sys., Inc., 176 F.3d 390, 398-99 (7th Cir. 1999) (four months too long); Adusumilli v. City of Chicago, 164 F.3d 353, 363 (7th Cir. 1998) (eight months too long); Davidson v. Midelfort Clinic, Ltd., 133 F.3d 499, 511

(7th Cir. 1998) (five months too long); <u>Conner v. Schnuck Markets, Inc.</u>, 121 F.3d 1390, 1395 (10th Cir. 1997) (four months too long)).

Perhaps in an effort to avoid this result, in her response brief Plaintiff attempts to divide her § 3617 allegations into two claims; contending that she has a retaliation claim, involving the paid leave and the termination of her employment, and also an interference claim that deals solely with the alleged efforts of Vern Bisterfeldt and Sally Zive to secure the withdrawal of the HUD complaint.[4] But even a pure interference claim requires the Plaintiff to show a link between the interference and "a 'distinct and palpable injury' as a result of the threat." <u>Brown v. City of Tucson</u>, 336 F.3d 1181, 1192-93 (9th Cir.2003) (discussing elements of a pure interference claim and quoting <u>Walker</u>, 272 F.3d at 1123); <u>see also</u> <u>San Pedro Hotel Co. v. City of Los Angeles</u>, 159 F.3d 470, 477 (9th Cir.1998) (stating that an element of a Fair Housing Act claim is that the plaintiff "suffered some resulting damage"). The paid leave and loss of the executive director position are the injuries Plaintiff alleges she suffered as a result of filing the HUD complaint. Again, timing alone is too remote to establish a casual link on these facts, as the statements by Vern Bisterfeldt and Sally Zive occurred five to six months prior to the Plaintiff's injuries. <u>See</u> <u>Villiarimo</u>, 281 F.3d at1065. Thus, even if viewed as separate § 3617 claims, Plaintiff still must come forward with some evidence to raise a genuine issue of material fact on whether the retaliation/injury she suffered–paid leave and loss of employment–is casually linked to the protected activity. This she has failed to do.

Furthermore, even if the Court were to assume that Plaintiff has made out a prima facie case, the City has come forward with a legitimate nondiscriminatory reason for taking any adverse action. The City explains that it became involved in the management of Community House after CHI brought to its attention the looming financial crisis and asked for help. This reason is supported by the record and is not directly contested by the Plaintiff.

---

[4]        However, it appears certain that Plaintiff has actually alleged only a retaliation claim, as is clear both from the caption of the Complaint, Pl.'s Compl. 1, and the body of the Complaint, Pl.'s Compl. ¶¶ 57-58.

The burden then shifts to Plaintiff to produce "specific, substantial evidence of pretext." Idaho Aids Foundation, Inc. v. Idaho Housing & Finance Ass'n, 422 F. Supp.2d 1193 (D. Idaho 2006) (granting summary judgment on § 3617 Fair Housing Act claim). Plaintiff, however, points to nothing more than the alleged comments of Vern Bisterfeldt and Sally Zive. (Pl.'s Resp. Br. 15-18, 18). As the Court already has noted, these statements are too remote in time to supply the specific, substantial evidence of an improper motivation for the actions taken by the City six months later that may have resulted in Plaintiff's paid leave and loss of employment.

Accordingly, the Court also will enter summary judgment on Plaintiff's Third Cause of Action.

## ORDER

Based on the foregoing, and the Court being fully advised in the premises, it is **HEREBY ORDERED** Defendant's Motion for Summary Judgment (docket no. 23) is **GRANTED** on all Plaintiff's causes of action and that this case is **DISMISSED** in its entirety. The trial scheduled for August 8, 2006 is **VACATED**.

DATED: **June 28, 2006**

Honorable Edward J. Lodge
U. S. District Judge